# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

HAROLD KAUBLE, )
)
    Plaintiff, )
)
v. ) Case No. CIV-17-729-D
)
BOARD OF COUNTY COMMISSIONERS )
OF THE COUNTY OF OKLAHOMA, ex rel., )
the Oklahoma County Sheriff's Office, a )
political subdivision, OKLAHOMA )
COUNTY SHERIFF'S OFFICE, a political )
subdivision, and JOHN WHETSEL, former )
Sheriff of Oklahoma County, in his individual )
capacity, )
)
    Defendants. )

## ORDER

Before the Court are motions to dismiss filed by Defendants the Oklahoma County Sheriff's Office [Doc. No. 10] and the Board of County of Commissioners of Oklahoma County (BOCC or the Board) [Doc. No. 11]. Plaintiff has filed his response in opposition [Doc. No. 13]. The matter is fully briefed and at issue.

## BACKGROUND

In November 2007, Plaintiff was ticketed for a traffic violation of following too closely. He failed to appear for his scheduled court date and a bench warrant was issued for his arrest. Plaintiff subsequently moved to New Mexico in 2008, where he remained for approximately seven years. In September 2015, Plaintiff returned to

Oklahoma. On December 9, 2015, police officers appeared at Plaintiff's house and informed him there was an outstanding warrant for his arrest. Plaintiff was arrested and transported to the Oklahoma County Detention Center (OCDC).

According to the Amended Complaint [Doc. No. 7],[1] Plaintiff was booked the day of December 9, 2015 and not released from custody until March 17, 2016. *See* Amend. Compl. ¶ 9. Plaintiff alleges that, on an almost daily basis, he requested information about his case and informed the jailers that he had not seen a judge. *Id*. ¶ 10. Despite the jailers' assurances to check on the matter, Plaintiff states he remained incarcerated for several months. *Id*. Plaintiff was not given the opportunity to post bail and his son's attempts in that regard were also unsuccessful. *Id*. ¶ 11. On January 22, 2016, Plaintiff's son paid all outstanding fees and costs Plaintiff owed on the traffic violation and bench warrant, yet Plaintiff remained in custody. *Id*. ¶ 12. On March 7, 2016, Plaintiff was transported to Cleveland County District Court to appear for alleged violations of several Victim's Protective Orders. He was subsequently released on own recognizance bonds and back into the custody of the Oklahoma County Sheriff's Office; the charges were later dismissed. *Id*. ¶ 13. On March 17, 2016, Plaintiff appeared before an Oklahoma County judge on the aforementioned bench warrant, who then ordered his release. *Id*. ¶ 14.

---

[1] Defendants moved to dismiss Plaintiff's original complaint under Rule 12(b), Federal Rules of Civil Procedure [Doc. No. 5], so he was entitled to "amend [his complaint] once as a matter of course…." *See* Fed. R. Civ. P. 15(a)(1)(B).

Plaintiff alleges his confinement violated his due process rights under the Fourteenth Amendment to the United States Constitution. Amend. Compl. ¶ 21.[2] Specifically, Plaintiff alleges Defendants were aware of overcrowding issues at the OCDC and the County maintained a policy, practice or custom of "overdetention," i.e., imprisoning someone for longer than legally authorized. *Id.* ¶¶ 23-24. Plaintiff alleges Defendant Whetsel either created, implemented, or had responsibility for the alleged overdetention policy, and he and the County participated in overdetention with deliberate indifference to how such unconstitutional practice would negatively affect Plaintiff and others similarly situated. *Id.* ¶¶ 25-27. Moreover, Plaintiff alleges the BOCC failed to correct the overcrowding/overdetention issues, and the County and Whetsel, pursuant to custom or policy, failed to adequately instruct, supervise, control, and train police officers to ensure citizens were not unlawfully detained. *Id.* ¶¶ 28-32. Plaintiff's claims arise under 42 U.S.C. § 1983 via the Fourteenth Amendment.

The Oklahoma County Sheriff's Office moves to dismiss the Complaint on the grounds it is neither a political subdivision of the State nor a legal entity capable

---

[2] Plaintiff appears to concede to the BOCC's motion as it relates to his Fourth Amendment claim. *See* Pl. Resp. to Mot. to Dismiss at 8 ("[Plaintiff] will concede the Fourth Amendment claim as set out in his Amended Complaint. However, his Fourteenth Amendment claim is sufficiently pled and shown."). Accordingly, this Order shall only address whether Plaintiff has stated a plausible cause of action under the Fourteenth Amendment.

of being sued. The BOCC moves to dismiss the Complaint on the grounds that: (1) the BOCC has no express authority to act in areas of detaining or releasing inmates, and Plaintiff therefore lacks standing to bring claims against the BOCC, and (2) Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## STANDARD OF DECISION

Pursuant to the seminal decisions of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to survive a motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). Under this standard, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original)).

The "plausibility" standard announced in *Twombly* and *Iqbal* is not considered a "heightened" standard of pleading, but rather a "refined standard," which the court of appeals has defined as "refer[ring] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

4

innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191 (citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). The Tenth Circuit has noted that the nature and specificity of the allegations required to state a plausible claim will vary based on context. *Robbins*, 519 F.3d at 1248. "Thus, [it has] concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.' " *See id*. at 1247.

Accordingly, in deciding *Twombly* and *Iqbal*, there remains no indication the Supreme Court "intended a return to the more stringent pre-Rule 8 pleading requirements." *Khalik*, 671 F.3d at 1191 (citing *Iqbal*, 556 U.S. at 678). It remains true that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555); *Khalik*, 671 F.3d at 1192 ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.") (quoting *al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009)).

A motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d

1143, 1148 n. 4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id*. In reviewing a facial attack, a district court must accept the allegations in the complaint as true. *Id*. In a factual attack, the moving party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id*. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id*. Instead, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id*.

## DISCUSSION

### I.  Oklahoma County Sheriff's Office

Plaintiff names the Oklahoma County Sherriff's Office as one of three Defendants. Because the Oklahoma County Sheriff's Office does not have a legal identity separate from that of Oklahoma County, it is not a suable entity and not a proper defendant in a civil rights action. *See Lindsey v. Thomson*, 275 F. App'x. 744, 747 (10th Cir. Sept. 10, 2007) (unpublished) (affirming dismissal of § 1983 claims against police departments and county sheriff's department, noting defendants were "not legally suable entities"); *Reid v. Hamby*, No. 95-7142, 1997 WL 537909, at *6 (10th Cir. Sept. 2, 1997) (unpublished). As such, Plaintiff fails to state a claim upon which relief may be granted against this Defendant.

## II. Oklahoma County Board of County Commissioners

As an initial matter, the Court notes that the BOCC's motion begins with the contention that Plaintiff lacks Article III standing to sue, and thus, the Court is without subject matter jurisdiction to hear his claims. Mot. at 5-13. While couched in terms of subject matter jurisdiction, this argument, in reality, is premised on the notion that Plaintiff has failed to state a claim upon which relief can be granted because the BOCC has no authority to act in areas of detaining or releasing inmates. *Id*. Federal courts have repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits because the standards governing the two rules differ markedly, as Rule 12(b)(6) provides greater procedural safeguards for plaintiffs than Rule 12(b)(1). *See Davis v. Wells Fargo*, 824 F.3d 333, 348-49 (3d Cir. 2016).

First, proceeding under Rule 12(b)(1) inverts the burden of persuasion; when presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim. *Id*. But under Rule 12(b)(1), *the plaintiff* must prove the Court has subject matter jurisdiction. *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) ("If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence.") (citation omitted); *Wanjiku v. Johnson County*, 173 F. Supp. 3d 1217, 1223 (D. Kan. 2016) ("Plaintiff bears the burden to

7

establish that jurisdiction is proper and thus bears the burden to show why the Court should not dismiss the case for lack of subject matter jurisdiction.") (citations omitted).

Second, the two rules treat the complaint's factual allegations very differently. Unlike Rule 12(b)(6), under which a defendant cannot contest the plaintiff's well-pled factual allegations, Rule 12(b)(1) allows a defendant to attack the allegations in the complaint and submit contrary evidence in its effort to show that the court lacks jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). "Thus, improper consideration of a merits question under Rule 12(b)(1) significantly raises both the factual and legal burden on the plaintiff. Given the differences between the two rules, 'a plaintiff may be prejudiced if what is, in essence, a Rule 12(b)(6) challenge to the complaint is treated as a Rule 12(b)(1) motion.'" *Davis*, 824 F.3d at 349 (citation and paraphrasing omitted).

"Rule 12(b)(6)—with its attendant procedural and substantive protections for plaintiffs—is the proper vehicle for the early testing of a plaintiff's claims." *See id*. As noted above, the BOCC does not contend Plaintiff is the wrong person to bring his claims. Rather, it argues that he has filed suit against the wrong party and his claims are without merit because the BOCC has no authority to act in areas of detaining or releasing inmates. "That may be true, and, if so, the ordinary course of litigation will root it out. But [the BOCC] may not short-circuit the usual process,

flip the burden of persuasion, and permit itself to submit competing facts to support its argument." *Davis*, 824 F.3d at 349.

With that said, the Court finds Defendant's motion should be denied. Federal courts have long recognized an individual has a liberty interest in being free from incarceration absent a criminal conviction. *Baker v. McCollan*, 443 U.S. 137, 144 (1979); *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010) ("[T]he right of an accused to freedom pending trial is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment.") (quoting *Meechaicum v. Fountain*, 696 F.2d 790, 791-92 (10th Cir. 1983)); *Gaylor v. Does*, 105 F.3d 572, 576 (10th Cir. 1997) (holding an arrestee obtains a liberty interest in being freed of detention once bail is set, because the setting of bail accepts the security of the bond for the arrestee's appearance at trial and "hence the state's justification for detaining him fade[s]."). In order to state a claim against the BOCC for such a violation, Plaintiff must plead facts showing (1) the existence of a municipal policy or custom, and (2) a direct causal link between the policy or custom and the injury alleged. *Dodds*, 614 F.3d at 1202. To this end, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).

As set out more fully above, Plaintiff's complaint alleges that upon being taken into custody, he repeatedly asked about the status of his case, but continued to

9

be incarcerated. Plaintiff alleges he was not given the opportunity to post bail for his release and that despite eventually paying all outstanding fees and costs owed, he remained in custody for approximately another two months. Plaintiff contends his prolonged confinement was due to Oklahoma County's long-standing policy of "overdetention," i.e., imprisoning someone for longer than legally authorized. In the Court's view, these allegations are minimally sufficient to state a plausible claim for relief under the Fourteenth Amendment. Again, BOCC's motion asks this Court to make a *merits-based* determination, which is inappropriate at the pleading stage. At this juncture, the Court does not weigh the evidence; it is only required to accept the well-pled factual allegations in the complaint as true, resolve all reasonable inferences in Plaintiff's favor, and ask whether it is plausible that he is entitled to relief. *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013); *Smith v. United States*, 561 F. 3d 1090, 1098 (10th Cir. 2009).[3] Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 1965).

---

[3] A federal court may not apply a standard more stringent than the usual pleading requirements of Rule 8(a) in § 1983 cases alleging municipal liability. *Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346, 347 (2014) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)).

Lastly, the Court finds the BOCC is a proper party to this suit. Although it is true that in certain circumstances a board of county commissioners may be an improper party because its policies or customs cannot be shown to be responsible for an alleged constitutional violation, that does not mean that a board can *never* be a proper party as a matter of law. *Harper v. Woodward County Bd. of Comm'rs*, No. CIV-11-996-HE, 2014 WL 7399367, at *9 (W.D. Okla. Dec. 29, 2014). Under Oklahoma law, a county is a suable entity that is sued through its board of county commissioners. *See* 19 OKLA. STAT. § 4 ("In all suits or proceedings by or against a county, the name in which a county shall sue or be sued shall be, 'Board of County Commissioners of the County of _____....'"). Moreover, as the court noted in *Harper, supra*, determining a party's responsibility for a policy that leads to a federal rights violation involves a fact-specific inquiry, and although a county's sheriff has charge and custody of the jail, the board of commissioners sets policies, including fiscal policies, that may be implicated in a violation of a county inmate's federal rights. *Id*. at *9.

## CONCLUSION

Accordingly, as set forth herein, Defendant Oklahoma County Sheriff's Office's Motion to Dismiss [Doc. No. 10] is **GRANTED**. Defendant Board of County of Commissioners of Oklahoma County's Motion to Dismiss [Doc. No. 11] is **DENIED**.

**IT IS SO ORDERED** this 15th day of February 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE